Brian C. Lake (#020543)
Kendra L. Haar (#030959)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
BLake@perkinscoie.com
KHaar@perkinscoie.com
docketphx@perkinscoie.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL J. BROSNAHAN,<br><br>Plaintiff,<br><br>v.<br><br>CALIBER HOME LOANS, INC., LSF9 MASTER PARTICIPATION TRUST, and SUMMIT SERVICE AND REALTY LLC<br><br>Defendants. | No. 3:16-cv-08277- DLR<br><br>**DEFENDANTS CALIBER HOME LOANS, INC., LSF9 MASTER PARTICIPATION TRUST, AND SUMMIT SERVICE AND REALTY LLC'S REPLY IN FURTHER SUPPORT OF THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**<br><br>(Honorable Douglas L. Rayes) |

Even before this Motion to Dismiss was filed, this Court clarified that "mortgagees and their beneficiaries, including mortgage servicing companies, are not debt collectors subject to the FDCPA." [Dkt. 7, 11/23/2016 Order, at 4 (quoting *Mansour, Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009)]. Yet, Plaintiff Michael J. Brosnahan's Response to Defendants Caliber Home Loans, Inc., LSF9 Master Participation Trust, and Summit Service and Realty LLC's (collectively

"Caliber")[1] Motion to Dismiss Plaintiff's First Amended Complaint ("Response") ignores this legal conclusion and repeats more of the same flawed arguments. [Dkt. 16, Response] It is a desperate attempt by Plaintiff to suggest there is some technicality that will allow him to keep his property without having to satisfy his mortgage obligations. Plaintiff's Response focuses solely on recovering under the Fair Debt Collections Practices Act ("FDCPA"), and all but abandons the other two statutory claims made in Plaintiff's First Amended Complaint ("FAC"). Both Plaintiff's Response and the FAC are composed entirely of conclusory allegations that fail to state a plausible claim for relief. [*See* Dkt. 7 at 4] Both Plaintiff's Response and the FAC rest on errors of law that cannot be rectified. The FAC contains no well-pleaded facts, fails to state any tenable claim for relief, and must be dismissed. Further, this Court should not allow Plaintiff to file a second amended complaint and should dismiss this action with prejudice because Plaintiff's claims are fatally flawed and cannot be salvaged by any amendment.

**Argument**

**I. VIEWED IN THE LIGHT MOST FAVORABLE TO PLAINTIFF, THE FAC STILL FAILS TO ALLEGE FACTS ENTITLING PLAINTIFF TO RELIEF.**

While the Rules of Civil Procedure ("Rules") permit a liberal pleading standard that requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the pleader must nonetheless demonstrate why relief is legally warranted *and* the pleading must contain factual allegations sufficient to raise that right to relief above the "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate that his claim is plausible on its face. *Id.* A plaintiff armed with nothing more than conclusions in his complaint is not entitled to discovery, and the complaint should not survive a motion to dismiss. *Id.* at 678-79. This principle is true

---

[1] The FAC makes no efforts to separate the Defendant entities or their conduct.

even when the plaintiff is proceeding pro se. *See, e.g.*, *Ticktin v. C.I.A.*, No. CV-08-998-PHX-MHM, 2009 WL 976517, at *4 (D. Ariz. Apr. 9, 2009).

Plaintiff's FAC and Response to Defendants' Motion to Dismiss offer only speculative and conclusory arguments, misapplied extracts of statutory language, and unadorned "the-defendant-unlawfully-harmed-me" accusations that do not justify survival past this Motion to Dismiss. [Dkt. 13, FAC; Dkt. 16, Response] The FAC offers no well-pleaded facts and no simple, direct, or concise allegations. The Response makes no attempt to state facts supportive of any claim without relying on unsupported speculation and conclusory allegations. [*Id.*] The FAC falls far short of the Rules' pleading requirements, and must be dismissed.

## II. PLAINTIFF HAS FAILED TO STATE ANY CLAIMS THAT WOULD ENTITLE HIM TO RELIEF.

Although the FAC raises claims under the Real Estate Settlement Procedures Act ("RESPA") (Count I) and the Truth in Lending Act ("TILA") (Count II), Plaintiff's Response to Defendants' Motion to Dismiss does not attempt to explain why or what facts would justify recovery under either of these federal statutes. [*Compare* Dkt. 13, FAC, at 22, *with* Dkt. 16, Response] Other than alluding to TILA in passing, the Response offers no facts, additional argument, or analysis as to why TILA would apply here. [Dkt. 16, Response, at 3, 8, 11] The Response does not cite to or discuss the FAC's RESPA claim at all. By failing to address these claims in the Response, Plaintiff essentially concedes that both Counts I and II of the FAC fail to state a claim.

### A. Plaintiff Fails to State a Claim under the Fair Debt Collections Practices Act (COUNT III).

Plaintiff states that this "matter arises out of Defendants' unlawful communication to the Consumer pursuant to 15 U.S.C. § 1692c(a) and the commencement of a non-judicial foreclosure proceeding against Consumer absent the required documentation pursuant to 15 U.S.C. § 1692e(2) § 1692f 6(a)." [Dkt. 16, Response, at 4] Neither of

these claims are legally valid under the circumstances, nor do they entitle Plaintiff to any type of relief.

### 1. Defendants are not "debt collectors" as defined by the FDCPA.

As this Court previously stated, "[t]o the extent Brosnahan's complaint is based on actions taken by Defendants to facilitate the non-judicial foreclosure of the Property, these actions do not qualify as debt collection within the meaning of the FDCPA." [Dkt. 7, 11/23/2016 Order, at 5]; *see also Ho v. ReconTrust Co., NA*, 840 F.3d 618, 621 (9th Cir. 2016) ("actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as the term is defined by the FDCPA"). "The object of a nonjudicial foreclosure is to retake and resell the security, not to collect money from the borrower." *Ho*, 840 F.3d at 621. "Foreclosing on a trust deed is an entirely different path than collecting funds from a debtor." *Id.*

Because Defendants actions here were to notice a Trustee's Sale commencing a nonjudicial foreclosure—which is not an attempt to collect on a debt but rather is the process of vesting and divesting of title to real property according to the parties' prior agreement under the deed of trust—this action is not an attempt to collect a "debt" as that term is defined by the FDCPA, and Defendants are not "debt collectors" as defined by the FDCPA. *See id.* at 621. Plaintiff does not even attempt to respond to this critical point, which by itself is fatal to the Complaint's FDCPA claims.

### 2. Defendants' communications to Plaintiff do not violate the FDCPA or provide Plaintiff grounds for relief.

Plaintiff points to communications from Defendants and asserts that his receipt of communications from Defendants violates the FDCPA. [Dkt. 16, Response, at 4, 12] This argument is similarly misplaced, and fails to establish that Defendants are "debt collectors" under the FDCPA. "Enforcement of a security interest will often involve communications between the forecloser and the consumer. When these communications are limited to the foreclosure process, they do not transform foreclosure into debt collection." *Ho*, 840 F.3d at 623. Notices in a foreclosure informing the borrower that the foreclosure process has begun, explaining the foreclosure timeline, educating the borrower

about the borrower's rights are notices designed to protect the borrower. *Id.* Such communications are vastly different from the "harassing communications that the FDCPA was meant to stamp out." *Id.* The repossession of a security interest and the nonjudicial foreclosure process requires some communication between the lender and the borrower. *Id.* at 623. Notice of a foreclosure sale does not constitute debt collection activity under the FDCPA. *Id.* Even though the prospect of having property repossessed may induce a borrower to pay off debt, the inducement exists by virtue of the lien, regardless of whether foreclosure proceedings begin. *Id.* at 621. As the Ninth Circuit explained, "[t]he fear of having your car impounded may induce you to pay off a stack of accumulated parking tickets, but that doesn't make the guy with the tow truck a debt collector." *Id.*

Here, Plaintiff vaguely describes communications from Defendants as "coercive" and "threatening" without appending the communications and without even describing the communications' actual contents. [Dkt. 16, Response, at 12] Because Defendants are not debt collectors under the FDCPA and are not attempting to collect funds from Plaintiff, but rather are attempting to recover the property that secures the deed of trust, Defendants must provide Plaintiff with some communications related to the foreclosure for Plaintiff's own benefit. Plaintiff has not indicated that any of the communications were unrelated to the foreclosure or the security interest in general, thus these communications do not violate the FDCPA, and Plaintiff has not stated a claim for relief by making claims about receiving communications from Defendants.

### 3. Forcing mortgage servicers to comply with the FDCPA would create a conflict with state non-judicial foreclosure statutes.

Holding trustees liable under the FDCPA for carrying out foreclosures and trustee's sales "would subject the trustee to obligations that would frustrate their ability to comply with [state] statutes governing non-judicial foreclosure." *Ho*, 840 F.3d at 624. The United States Supreme Court has instructed the courts not to interpret the FDCPA in a way that interferes with state law unless Congress clearly intended to displace that state law. *See, e.g.*, *Sheriff v. Gillie*, 136 S. Ct. 1594, 1602 (2016) (holding that an independent contractor's communications collecting debts owed to the state of Ohio and printed on

state letterhead were not misleading under the FDCPA when Ohio law permitted the independent contractors to use the letterhead).

In Arizona, applying the FDCPA to nonjudicial foreclosure actions would frustrate the trustee's ability to comply with Arizona statutes. For example, the FDCPA prohibits debt collectors from directly communicating with debtors if the debt collector knows that the debtor has legal representation. 15 U.S.C. § 1692c(a)(2). But Arizona law requires the trustee to mail the notice of sale "to each person who, at the time of recording of the notice of sale, appears on the records of the county recorder in the county in which any part of the trust property is situated to have an interest in any of the trust property," without mention for concern of whether an individual is represented. *See* A.R.S. § 33-809(B)(2). As an additional example, Arizona law requires the trustee to mail a copy of the notice of sale within five days after recording it, pursuant to A.R.S. § 33-809(C), but compliance with that statutory deadline could be hindered by the disputed debt provisions of the FDCPA, if it were applied to non-judicial foreclosures. *See* 15 U.S.C. § 1692g(b). This further demonstrates the wisdom of the court's repeated holdings that the FDCPA simply does not apply to the nonjudicial foreclosure process because it is not the collection of a "debt." Plaintiff's Count III under the FDCPA must be dismissed.

### B. Plaintiff's FAC does not state a claim entitling him to relief by arguing that the "chain of title" to the Property is somehow "broken."

Once again, Plaintiff has failed to allege *any* well-pleaded facts to support this newly asserted argument that there is a "broken chain of title" and therefore Defendants are unable to enforce the Loan Documents. [Dkt. 16, Response, at 6] Even if Plaintiff's new assertion (which is not included in the FAC) were accepted as true, that a Deutsche Bank assignment was not recorded properly, Arizona law is clear that a party is not required to record a mortgage assignment before collecting payments or notifying the borrower that it is the new holder of the loan. *See, e.g.*, *O'Shea v. OneWest Bank, FSB*, CV11-08102-PCT-DGC, 2012 WL 152-0177, at *5 (D. Ariz. Apr. 30, 2012) ("[A]n assignment of the beneficial interest in a deed of trust [need not] be recorded to be valid."). And the loan assignments that have been recorded demonstrate that the last

entity authorized to enforce the loan documents granted its rights to the next entity from the 2006 entry into the Deed of Trust until today, which is demonstrated in the documents attached to the Request for Judicial Notice. (Dkt. 14-1, Request for Judicial Notice). Plaintiff's argument is nothing more than a re-hashed version of the "show me the note" arguments made by borrowers in foreclosure actions that have been repeatedly rejected by the courts. *See, e.g.*, *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009) ("Arizona's judicial foreclosure statutes . . . do not require presentation of the original note before commencing foreclosure proceedings. *See* A.R.S. § 33-807."). Plaintiff's broken chain of title argument is not pled in the complaint, and in any event fails to state a claim upon which relief may be granted.

### III. THE COURT MAY TAKE JUDICIAL NOTICE OF DOCUMENTS WITHIN THE PUBLIC RECORD.

Plaintiff challenges documents that were attached to the Defendants' Request for Judicial Notice.[2] [Dkt. 16, Response, at 2] Plaintiff states that he "hereby questions the authenticity and/or authority of all signatures by any and all parties," without explaining precisely which document signature he takes issue with, or why. [*Id.*] Plaintiff does claim that he was involved in an earlier dispute (before the current Defendants became the owners of his Note) that allegedly resulted in a Texas Notary Public's suspension for failing to properly log the details of the 2009 Trustee's Sale. [*Id.* at 4-5] But even

---

[2] Plaintiff challenges some of the loan documents that are filed in the Official Records of Coconino County Recorder's Office because the copy of the documents submitted to the Court with the Motion to Dismiss included an "Unofficial Copy" stamp. [Dkt. 16, Response, at 2] Federal Rule of Evidence 201 permits courts to take judicial notice of any facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b)(2). The rule does not limit the scope of judicial notice to only "official" copies of documents, and importantly Plaintiff offers to reason at all for the Court to doubt the accuracy of the previously submitted documents (let alone any "reasonabl[e]" basis to question their accuracy). The previously submitted records were pulled directly from the Coconino County Recorder's Office website and submitted for the convenience of the Court to provide an example of the exact documents that are contained in the official records, and the Court has the ability to directly access those records itself online if it were so inclined. Nevertheless, to avoid any further argument about this irrelevant side issue, Defendants have obtained Official Copies of the exact same documents that were previously submitted from the County Recorder's Office, and those official copies are being provided along with this Reply attached to the concurrently filed Amended Request for Judicial Notice.

1 assuming the truth of that unsupported assertion, at best, it might only relate to a possible
2 reason why the 2009 Trustee's Sale did not occur. Plaintiff cannot possibly be asserting
3 this anecdote as grounds to challenge the veracity all Loan Documents filed in the public
4 record.

Second, Plaintiff attempted to dismiss the offered documents showing the history of litigation surrounding his possession of the Property as prejudicial and unrelated to the federal question before the court. [Dkt. 16, Response, at 2] Yet, Plaintiff points to other prior disputes in which he has been involved to support his suspicions that there is a problem with the Loan documents. [*See id.* at 4-5] Plaintiff cannot rely on prior actions when it helps his argument and disclaim evidence of other prior actions as prejudicial. The prior lawsuits that Plaintiff filed regarding this Property and other properties he owns goes directly to his motivation for filing the present suit. It demonstrates that Plaintiff's strategy has always been the same, regardless of which lender or which property is involved—keep vaguely claiming there is some kind of technical error in the paperwork or the foreclosure process that will result in him owning the property free and clear without paying his mortgage, no matter how many times courts reject those arguments.

Finally, Plaintiff claims that the documents attached to the Request for Judicial Notice are inadmissible hearsay evidence. [Dkt. 16, Response, at 6] The Rule Against Hearsay (Fed. R. Evid. 802) is designed to exclude unreliable evidence. *See, e.g.*, *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir. 1980). By contrast, Rule 201, permitting judicial notice of documents that can be accurately and readily determined from the sources that the documents' accuracy cannot reasonably be questioned, by definition are documents that do not raise the same concerns of unreliability as hearsay evidence. *See* Fed. R. Evid. 201. And in any event, all of the documents that were submitted by Defendants easily fall within one or more of the recognized exceptions to the hearsay rule, including the exceptions for business records (FRE 803(6)), public records (FRE 803(8)), records of documents that affect an interest in property (FRE 803(14)), statements in documents that affect an interest in property (FRE 803(15)) and/or the residual exception

since there are equivalent circumstantial guarantees of the documents' trustworthiness and admission is in the interests of justice (FRE 807). Accordingly, Plaintiff's objections to documents filed in his prior cases and to the Loan Documents related to his Property are without merit.

## IV. ADDITIONAL AMENDMENT OF THE FAC WOULD BE FUTILE.

In his Response, Plaintiff requests (at 13) that the Court grant leave to again amend his First Amended Complaint. But Plaintiff was already given one opportunity to amend his flawed claims, and no amendment could possibly fix the fatal errors outlined in Defendants' Motion to Dismiss. As more fully explained in Defendants' Motion, no amendment will allow Plaintiff to state any claim based on a violation of RESPA, TILA, or the FDCPA. [Dkt. 14, Motion to Dismiss, at 8-13] No set of facts will allow Plaintiff to state a claim for wrongful foreclosure—to the extent such a claim even exists in Arizona—because Plaintiff cannot allege that he was not in default or is able to tender the full amount due on the note. Plaintiff's Complaint cannot "possibly be cured by the allegations of other facts," therefore dismissal with prejudice is appropriate. *See, e.g.*, *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### Conclusion

For the foregoing reasons, and because no further amendment would repair Plaintiff's fatally flawed claims, Defendants respectfully request that the Court dismiss with prejudice all of Plaintiff's claims.

Dated: March 2, 2017            **PERKINS COIE LLP**

By: /s/ *Kendra L. Haar*
     Brian C. Lake
     Kendra L. Haar
     2901 North Central Avenue, Ste. 2000
     Phoenix, Arizona 85012-2788

Attorneys for Defendants Caliber Home Loans, LSF9 Master Participation Trust, and Summit Service and Realty LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2017, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing.

I also certify that on March 2, 2017, I served a copy of the attached documents via First Class mail on Plaintiff *Pro Se* Michael J. Brosnahan, 21 Hummingbird Circle, Sedona, AZ 86336-7012.

s/ Susan Carnall