Brian C. Lake (#020543)
Kendra L. Haar (#030959)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
BLake@perkinscoie.com
KHaar@perkinscoie.com
docketphx@perkinscoie.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL J. BROSNAHAN,<br><br>Plaintiff,<br><br>v.<br><br>CALIBER HOME LOANS, INC., LSF9 MASTER PARTICIPATION TRUST, and SUMMIT SERVICE AND REALTY LLC<br><br>Defendants. | No. 3:16-cv-08277- DLR<br><br><br>**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>(Honorable Douglas L. Rayes) |

Plaintiff Michael J. Brosnahan's Second Amended Complaint ("SAC") continues to violate the Rules of Civil Procedure and, again, should be dismissed outright.  [Doc. 24 (SAC)]  Defendants Caliber Home Loans, Inc., LSF9 Master Participation Trust, and Summit Service and Realty LLC (collectively "Caliber")[1] move to dismiss the SAC for failure to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)") and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## MEMORANDUM IN SUPPORT

Plaintiff filed this action to halt the pending non-judicial foreclosure and trustee's sale of Plaintiff's residential property securing his 2006 home loan.  Plaintiff makes no attempt to deny or explain his default of his loan obligations.[2]  In fact, Plaintiff stopped making payments on the loan *nearly nine years ago* on January 1, 2009, and has made no payments since.  [*See* Doc. 13 (First Amended Complaint ("FAC")) at 17]  Nevertheless, Plaintiff now seeks to enjoin the trustee's sale of the property and also collect damages under a nebulous theory that the issuer and later noteholder of the loan and deed of trust somehow violated a variety of state and federal laws in originating, servicing, and foreclosing on the loan.  [Doc. 24 (SAC) at 29]  The SAC makes these claims without articulating a single fact indicating any type of wrongdoing occurring on his particular home loan.

Plaintiff even has the audacity to argue that because the loan was in default at the time Defendant acquired the loan, he should not be obligated to perform under the loan documents and he should be permitted to keep the collateral for the loan.  [*Id.* at ¶ 33]  Plaintiff's convoluted, 30-page-long SAC—while still  unclear about the theories under which Plaintiff would be entitled to any relief—seeks damages and unspecified injunctive and declaratory relief.  [*Id.* at 29]  Without any apparent legal justification, Plaintiff has

---

[1]  The SAC makes no efforts to separate the Defendant entities or their conduct.

[2]  *See generally* Doc. 13, (First Amended Complaint ("FAC")) (containing no allegations that the debt has been satisfied); Doc. 24 (SAC) (same).

1   been successfully delaying foreclosure and complicating the noteholders' rights to enforce

2   the loan documents for years by filing multiple lawsuits regarding this same property, for

3   which he long ago stopped making loan payments.  Plaintiff's first lawsuit was dismissed

4   with prejudice by a federal judge as being without merit.  [*See, e.g.*, Doc. 23 (9/19/2017

5   Order) at 4]  This action should similarly be dismissed with prejudice.

6                    **Brief Statement of Relevant Facts[3]**

7   **I.    LOAN HISTORY**

8            In 2006, Plaintiff borrowed $373,500.00 from Countrywide Home Loans, Inc.,

9   which was secured by a Deed of Trust ("DOT") against the property at 21 Hummingbird

10  Circle, Sedona, AZ 86336 ("the Property").  [*See* Doc. 23 (9/19/2017 Order) at 2]  In the

11  DOT, which served as the loan's Security Instrument, the following parties are defined:

12  Countrywide as the Lender, the Mortgage Electronic Registration System, Inc. ("MERS")

13  as the beneficiary, and Plaintiff as the Borrower. [Doc. 14-2 (Request for Judicial Notice),

14  Ex. 1, DOT]  On May 25, 2006, Plaintiff, as the "Borrower,"  executed a Promissory Note

15  (the "Note") and the DOT and Security Instrument. [*Id.* (Request for Judicial Notice),

16  Exs. 1 (DOT) & 2 (Note)]  Plaintiff stopped making payments on the Loan on January 1,

17  2009.  [*See* Doc. 24 (SAC), Ex. 1]

18           As contemplated by paragraph 20 of the DOT, the Note was sold one or more times

19  over the course of the loan, and the Loan Servicer changed as well.  As of July 2016, the

20  DOT and loan documents were assigned to LSF9 Master Participation Trust as

21  beneficiary. [Doc. 14-2 (Request for Judicial Notice), Ex. 7]

22           As also contemplated by the DOT (at ¶ 24), the Trustee was substituted from time

23  to time and successor trustees were appointed.  The original Trustee was Fidelity National

24  Title Insurance Co. [Doc. 14-2 (Request for Judicial Notice), Ex. 1 (DOT at 1)]  After a

25

---

26  [3]  The facts set forth in this Brief Statement are undisputed, accepted as true for the
    purposes of this Motion, and are based on the Second Amended Complaint allegations or
27  other documents, of which the Court may take judicial notice.  A more complete history
    of this loan and litigation surrounding the property was included in Caliber's first motion
28  to dismiss (Doc. 14) and is incorporated by reference herein.

1   series of assignments that have been recorded, as of August 24, 2016, the present

2   beneficiary is LSF9 Master Participation Trust, by Caliber Home Loans, Inc., solely in its

3   capacity as servicer.  LSF9 substituted the trustee and appointed Summit Services and

4   Realty, LLC, as Trustee under the DOT.  [Doc. 14-2 (Request for Judicial Notice), Ex. 10]

5   **II.      LITIGATION HISTORY**

6        Plaintiff stopped making payments on the Loan on January 1, 2009.  [*See* Doc. 24

7   (SAC), Ex. 1]  A former trustee (Trustee Recontrust Company) filed the first Notice of

8   Trustee's Sale on the Property in 2009.  [Doc. 14-2 (Request for Judicial Notice), Ex. 11]

9   Plaintiff fought this this non-judicial foreclosure in court by filing an action in Superior

10  Court in Coconino County, which the defendants removed to federal court.  [*Id.* (Request

11  for Judicial Notice), Exs. 15 and 16]  This case was resolved when Judge Martone granted

12  the note holder's motion to dismiss. The court concluded that "[t]o survive a motion to

13  dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to 'state a

14  claim to relief that is plausible on its face''" and "Plaintiff's complaint does not satisfy

15  this test." [*Id.* (Request for Judicial Notice), Ex. 18 at 1-2 (*quoting Ashcroft v. Iqbal*, 129

16  S. Ct. 1937, 1949 (2009))]  The Complaint was ultimately dismissed with prejudice.

17       In 2016, LSF9 Master Participation Trust acquired an interest in the Loan and sent

18  Plaintiff a Notice of Ownership.  Then, on August 24, 2016, Caliber recorded a Notice of

19  Trustee's Sale in the Coconino County Recorder's Office, which was scheduled for

20  November 23, 2016 and subsequently cancelled.  [*Id.* (Request for Judicial Notice), Exs.

21  12-14]  Caliber recorded another Notice of Trustee's Sale, scheduled for February 27,

22  2017.  [*Id.*]

23       Plaintiff apparently now claims that the Loan was unilaterally "rescinded" by him

24  in 2009, but Plaintiff still possesses the collateral for the Loan.  [*See* Doc. 24 (SAC) ¶¶

25  127-139]

26       On November 22, 2016, Plaintiff commenced this action.  The Complaint alleged a

27  single claim under the Fair Debt Collection Practices Act related to the initiation of a non-

28  judicial foreclosure of the Property.  [Doc. 1]  Plaintiff also filed an ex parte Application

for an Emergency Temporary Restraining Order ("TRO") to Stay the Sale of Real Property. [Doc. 1 at 1; Doc. 7 (11/23/2016 Order) at 1]  The Court denied Plaintiff's TRO Application and ordered Plaintiff to serve the Defendants with the Complaint.  [Doc. 7 (11/23/2016 Order) at 5]   The Court's order outlined the insufficiencies of Plaintiff's Complaint in asserting a claim arising under the FDCPA.  [*Id.* at 4-5]  The Court found:

> to the extent Brosnahan's complaint is based on actions taken by [Caliber] to facilitate the non-judicial foreclosure of the Property, these actions do not qualify as debt collection within the meaning of the FDCPA. Moreover, although the FDCPA provides for civil damages, Brosnahan cites no authority that alleged violations of the FDCPA give rise to a defense against non-judicial foreclosure. *Id.* at 5.

Plaintiff served the complaint and summons on Caliber. [Doc. 12]  And the parties met and conferred to discuss the case.  [Doc. 13 at 5]  Plaintiff filed the FAC, which alleged three causes of action:  (1) violation of the Real Estate Settlement Procedures Act ("RESPA"); (2) violation of the Truth in Lending Act ("TILA"); and (3) violation of the Fair Debt Collection Practices Act ("FDCPA").  [Doc. 13 at 22-25]  The Court dismissed the FAC in September 2017 for failure to state a claim.  [Doc. 23 (9/19/2017 Order)]  The Court instructed Plaintiff that as a seasoned litigation, Plaintiff must familiarize himself with the Federal Rules, particularly Rules 8, 9, and 10.  [*Id.* at 4]  The Court also reminded Plaintiff to "carefully review Defendants' motion to dismiss, as well as this Court's prior order denying is TRO application, and ensure that his amended pleading does not contain claims that are unsupportable by fact or law."  [*Id.*]

Plaintiff has now filed a SAC that alleges four purported causes of action: (1) failure to meet a condition precedent; (2) violation of the Real Estate Settlement Procedures Act ("RESPA"); (3) violation of the Truth in Lending Act ("TILA"); and (4) violation of the Fair Debt Collection Practices Act ("FDCPA").  [Doc. 24 (SAC)]  Many of Plaintiff's claims are unchanged from the FAC and even use the same language to describe his claims that have already failed before this Court.

## Argument

To survive a motion to dismiss, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

1    8(a)(2).  A complaint must also contain sufficient factual matter, accepted as true, to 'state

2    a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

3    (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To survive dismissal for

4    failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than

5    "labels and conclusions" or a formulaic recitation of the elements of a cause of action"; it

6    must contain factual allegations sufficient to "raise a right to relief above the speculative

7    level." *Twombly*, 550 U.S. at 555.  The Rules demand "more than an unadorned, the-

8    defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

9        While a court must generally accept as true all allegations contained in a complaint,

10   that tenet does not apply to mere conclusory statements.  *Id.* at 678-79.  And even pro se

11   litigants like the Plaintiff "must comply with Federal Rules of Civil Procedure and meet

12   certain minimal standards of pleading." *See Ticktin v. C.I.A.*, No. CV-08-998-PHX-

13   MHM, 2009 WL 976517, at *4 (D. Ariz. Apr. 9, 2009) (quotation omitted).

14       Plaintiff offers *no* well-pleaded facts and *no* simple, direct, or concise allegations.

15   The SAC continues to fall far short of the Rules' pleading requirements, and must be

16   dismissed.

17   **I.    THE SAC VIOLATES FEDERAL RULES OF CIVIL PROCEDURE 8(A)**
     **AND 8(D), AS WELL AS THIS COURT'S DECEMBER 1, 2016 AND**
18   **SEPTEMBER 19, 2017 ORDERS.**

19       Rule 8 requires "sufficient allegations to put defendants fairly on notice of the

20   claims against them." *Brabant v. JP Morgan Chase Bank*, CV 11-00848-TUC-JGZ, 2012

21   WL 2572281, at *3 (D. Ariz. July 2, 2012) (quoting *McKeever v. Block*, 932 F.2d 795,

22   798 (9th Cir. 1991)).  A complaint that consists of conclusory allegations against a group

23   of defendants without specific allegations of individual wrongdoing does not put

24   defendants fairly on notice of the claims against them.  *Id.* (dismissing complaint where

25   claims against all defendants were devoid of any attempt to associate factual allegations

26   with specific defendants or claims.).  In addition, "[e]ach allegation must be simple,

27   concise and direct."  Fed. R. Civ. P. 8(a).

28

1    While, in general, courts liberally construe the pleadings of a pro se litigant, "pro

2    se litigants are [still] bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54

3    (9th Cir. 1995); *see also Sepehry-Fard v. Dept. Stores Nat'l Bank*, 15 F. Supp. 3d 984,

4    987 (N.D. Cal. 2014) ("pro se pleadings must still allege facts sufficient to allow a

5    reviewing court to determine whether a claim has been stated.").

6    Here, the SAC as a whole fails to make "simple, concise and direct" allegations.

7    Caliber should not have to wade through the SAC to try to glean what facts support

8    Plaintiff's various claims for relief he has attempted to allege. The fact that Plaintiff is

9    pro se does not give him license to ignore the Rules of Civil Procedure or to pursue a

10   lawsuit without alleging facts to support his legal claims, relying instead on conclusory

11   assertions and a scattershot list of statutes. For this independent reason, the Court should

12   dismiss the SAC with prejudice.

13   **II.    PLAINTIFF HAS FAILED TO STATE ANY CLAIMS FOR RELIEF.**

14   The SAC should also be dismissed based on the substance of the claims asserted in

15   it. While Plaintiff now alleges four total claims against all Defendants, all of Plaintiff's

16   claims are without any merit or supporting well-pleaded facts. Rule 8 requires "sufficient

17   allegations to put defendants fairly on notice of the claims against them." When it

18   dismissed the FAC, this Court noted that "Plaintiff has submitted a rambling 27-page

19   narrative that fails to clearly and concisely state the factual and legal bases for his claims."

20   [Doc. 23 (9/19/2017 Order), at 3] The only real difference with the SAC is that now

21   Plaintiff has submitted a rambling *30-page* narrative that is just as defective in failing to

22   clearly and concisely state the factual and legal bases for his claims. The SAC fails to

23   inform Caliber of the claims against it any more than did the Complaint or the FAC.

24   Thus, Plaintiff fails to state any claim upon which relief can be granted, and the Court

25   should again dismiss all of Plaintiff's claims with prejudice. *See, e.g.*, *Robinson v. BAC*

26   *Home Loans Servicing, LP*, CV11-1920-PHX-JAT, 2012 WL 1520125, at *4 (D. Ariz.

27   May 1, 2012) (dismissing complaint with prejudice that contained "numerous mortgage

28

1    foreclosure arguments that have been rejected time and time again for failure to state a

2    claim" because amendment would be futile and no additional facts could save the claims).

3         In the SAC, Plaintiff relies predominately on the same legal conclusions and

4    arguments outlined in the failed FAC.  While the arguments are organized into numbered

5    paragraphs this time around, Plaintiff continues to fail to provide facts supporting his legal

6    conclusions and instead relies on various recitations of statutory language and irrelevant

7    case law.  The SAC adds very few (if any) additional facts to remedy the deficiencies of

8    the FAC, as outlined in the Court's September 19, 2017 Order.  [Doc. 23]  As the Court

9    has already explained, "[l]egal conclusions couched as factual allegations are not entitled

10   to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are

11   insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec.*

12   *Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010)."  [*Id.* at 2]

13       **A.**    **Plaintiff Fails to State a Claim for Relief by Arguing that a Condition**

14              **Precedent has been Unmet (COUNT I).**

     The SAC's first claim, that Defendants failed to meet various conditions precedent

15   contained in the loan documents, does not state a claim for which any relief should be

16   granted.  [Doc. 24 (SAC) at ¶¶ 108-122]

17

18       **1.**    **Plaintiff's claim that a condition precedent of acceleration fails to**
           **state a claim.**

19        In Count I, Plaintiff first alleges the DOT contained a condition precedent requiring

20   notice of acceleration prior to initiation of a trustee's sale.  [*See* SAC, Doc. 24, at ¶¶ 110-

21   112]  Plaintiff asserts that he did not received a notice of acceleration before the trustee's

22   sale notice was recorded.  [*Id.* at ¶ 113]  Even if acceleration is required before a trustee's

23   sale is held and Caliber has not yet accelerated the loan, this alleged failure does not state

24   a claim for relief because the trustee's sale has not yet occurred and notice of acceleration

25   may still be issued.  In the SAC, Plaintiff, in fact, quotes language from the DOT

26   demonstrating that acceleration was not a prerequisite to initiating foreclosure.  [*See* SAC,

27   Doc. 24, at ¶¶ 110-112]  Indeed, the acceleration clause does not require acceleration

28   before sale, but requires thirty days' notice of default and notice of intent to accelerate

1    before the acceleration is to occur.  [*See* Doc. 14-2 (Request for Judicial Notice), at Ex. 1
2    (DOT ¶ 22)]

3         Moreover, a rider in the loan document unequivocally supports the reading that
4    loan acceleration is not required before filing a notice of trustee's sale.  Specifically, in the
5    1-4 family rider, signed by Plaintiff in 2006, states:  "Borrower's default or breach under
6    any note or agreement in which Lender has an interest shall be a breach under the Security
7    Instrument and Lender may invoke *any of the remedies* permitted by the Security
8    Instrument."  [*See id.* (Request for Judicial Notice), at Ex. 2 (Loan Documents, 1-4
9    Family Rider at ¶ I)]  Finally, under the Note ¶ 10, Plaintiff explicitly waived any right of
10   Presentment, which waived any requirement that the Note Holder to demand payment of
11   amounts due.  [*See id.* (Request for Judicial Notice), at Ex. 2 (Note ¶ 10)]

### 2.    The historical "Substitutions of Trustees" not appointed by the original lender fail to state a claim for relief.

12
13        In this Count, Plaintiff also alleges that only the Lender may substitute the trustee
14   and because Defendants entered a Substitution of Trustee, the loan documents were
15   breached.  [Doc. 24 (SAC) at ¶¶ 117-120]

16        This assertion controverts the law and common sense.  The DOT (at ¶ 24) states
17   that "Lender may, for any reason or cause, from time to time remove Trustee and appoint
18   a successor trustee to any Trustee appointed hereunder.  Without conveyance of the
19   Property, the successor trustee shall succeed to all the title, power and duties conferred
20   upon Trustee herein and by Applicable Law."  [Doc. 14-2 (Request for Judicial Notice), at
21   Ex. 1 (DOT ¶ 24)]  The DOT (at ¶ 13) also states that "[t]he covenants and agreements of
22   this Security Instrument shall bind (except as provided in Section 20) and benefit the
23   successors and assigns of Lender."  [*See* Doc. 14-2 (Request for Judicial Notice), at Ex. 1
24   (DOT ¶ 13)]  With each assignment of the DOT, the new Noteholder steps into the shoes
25   of the original lender.[4]  When the Noteholder steps into the shoes of the original lender, it

26

---

27   [4]  *See, e.g.*, Doc. 14-2 (Request for Judicial Notice), at Exs. 3-7 (granting, assigning, and transferring all beneficial interests under the deed of trust dated 5/25/2006 and recorded as instrument No. 3386186 on 5/31/2006).

28

has the rights and responsibilities of the original lender under the loan documents.  Filing a substitution of trustee would thus, not constitute a filing of a "false document," as the SAC suggests.  [Doc. 24 (SAC) at ¶ 120]  Further, nothing in the DOT states that only the original lender may substitute a trustee, and this assertion fails to state any claim for relief.[5]

### 3. The asserted violation of the "Time of the Essence" clause fails to state a claim for relief.

In this Count, Plaintiff finally alleges that Defendants violated Paragraph 25 of the DOT (Time of Essence).  The SAC does not assert how this clause was violated, when, or what ramifications resulted from such alleged breach.  [Doc. 24 (SAC) at ¶ 121]  Indeed, this allegation contains no well-pled facts to which Caliber can respond.  Accordingly, this allegation fails to state a claim for relief.

### B. Plaintiff Fails to State a Claim for Relief Under the Real Estate Settlement Procedures Act ("RESPA") (COUNT II).

Next, Plaintiff claims that Defendants are liable for violating the Real Estate Settlement Procedures Act ("RESPA"), pursuant to 12 U.S.C. § 2605.  [Doc. 24 (SAC) at ¶¶ 123-126]  RESPA provides that "[i]f a servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response" and "provide the borrower with a written explanation or clarification that includes . . . information requested by the borrower [and] the name and telephone number of an individual employed by, or the officer or department of, the servicer who can provide assistance to the borrower."  12 U.S.C. § 2605(e).  A qualified written request must include the borrower's information and a statement of the reasons the account is believed to be in error.  *Id.*  A qualified written request "is one that relates to the servicing of the loan."  *Brabant*, 2012 WL 2572281, at *9 (*citing Consumer Sols. REO v. Hillery*, 685 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009)).

---

[5] It is ironic Plaintiff is asserting that Caliber is liable as a successor noteholder for some supposed (unidentified) TILA violations in the original lender's 2006 loan documents, but that Caliber cannot be a successor noteholder for the administrative purpose of substituting a trustee.

1          Plaintiff incomprehensibly asserts, again, that his "written requests for information
2   about his account and correction of Defendants' numerous errors 'qualified written
3   requests' within the meaning of RESPA." [Doc. 24 (SAC) at ¶ 125] Plaintiff continues to
4   assert that Defendants: "failed to respond in a proper and timely way to Plaintiff's
5   'qualified written requests' for information about, and corrections to, his mortgage
6   account, in violation of 12 U.S.C. § 2605(e)." [*Id.* at ¶ 126] Plaintiff now attaches his
7   June 27, 2016 written requests to the SAC, [*Id.* at Ex. 7], but continues to fail to attach
8   the supposedly insufficient responses. Plaintiff seemingly quotes from communications
9   from Caliber discussing the loan, but the quote included in the SAC is actually taken from
10  a letter sent from Plaintiff to Caliber. [*Id.* ¶ 84] Plaintiff concedes in the SAC that
11  Caliber responded to Plaintiff's June 27, 2016 letter, but jumps to the conclusion that
12  Caliber's response was "non-responsive" and insufficient. [*Id.*] Plaintiff fails to provide
13  any facts demonstrating the deficiencies of Caliber's response and fails to include the
14  response as an exhibit to the SAC. Importantly, Plaintiff's communication is not a
15  qualified written request because it poses no questions about the servicing of the loan, but
16  rather challenges Caliber's right to service the loan and the validity of the underlying
17  documents. This is not a basis for a claim under RESPA, and the SAC fails to allege facts
18  that support a claim for relief under RESPA. *See Brabant*, 2012 WL 2572281, at *9.

19         Additionally, to recover under RESPA, a plaintiff must allege facts demonstrating
20  that he suffered actual damages as a result of a defendant's alleged failure to respond.
21  This is also grounds for dismissal of Plaintiff's RESPA claim. *See Amaral v. Wachovia*
22  *Mortgage Corp.*, 692 F. Supp. 2d 1226, 1232 (E.D. Cal. 2010) ("Absent factual
23  allegations suggesting that Plaintiffs suffered actual damages, Plaintiffs' RESPA claim is
24  insufficiently pled and subject to dismissal."). The SAC contains no factual allegations
25  relating to actual damages, and this insufficiently pled claim should be dismissed.

26

27

28

**C.    Plaintiff Fails to State a Claim for Relief Under the Truth in Lending Act (COUNT III).**

Plaintiff claims that Defendants are liable for violating the Truth In Lending Act ("TILA"), pursuant to 15 U.S.C. § 1635.  [Doc. 24 (SAC) at ¶¶ 127-139]  There are no factual allegations in the SAC, which if proven true, could establish any Defendant's liability under TILA.  Plaintiff's TILA claim provides a series of conclusory assertions that Caliber violated TILA without providing factual support—and citing a series of other statutes unrelated to TILA.  [*Id.*]  Plaintiff fails to state any facts in this count, let alone facts that would entitle him to any sort of relief.

TILA requires lenders to make certain specific disclosures of information in certain approved formats before the loan is consummated.  *See* U.S.C. § 1601, *et seq.*  Caliber was not involved in originating Plaintiff's 2006 loan—it had no involvement until 2016.  Thus, to survive a motion to dismiss, Plaintiff would have to allege specific facts showing how his original lender failed to make the adequate disclosures required by the statute before the loan was made, *and* establishing some basis by which Caliber could be held liable for such a failure.  As for civil damages claims against a subsequent assignee of a loan secured by real property, TILA expressly provides that such a claim "may be maintained against any assignee of such [original] creditor only if—(A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter . . . ."  15 U.S.C. § 1641(e)(1).  Plaintiff has not pleaded any facts establishing that any alleged TILA violation was "apparent on the face of the disclosure statement" that was provided to Plaintiff when the loan was initially made in May 2006.

Further, even if Caliber had been involved in originating Plaintiffs' loans, the time in which to bring such an action has run.  The statute of limitations for a civil damages claim under TILA is only one year.  *Id.* § 1640(e).  Since the loan was made in 2006, this limitations period has long since run.  The right to rescind a transaction under TILA expires three years after the date of consummation of the transaction.  *Id.* § 1635(f).  "This

1    three-year period is not a statute of limitations within which to file an action, but is rather

2    the duration of the right to rescind." *McCann v. Quality Loan Serv. Corp.*, 729 F. Supp.

3    2d 1238, 1242 (W.D. Wash. 2010).  Although Plaintiff now provides a letter purportedly

4    sent to his lender on or about May 15, 2009—ten days before the expiration of the statute

5    of limitations based on the date included in the DOT—the TILA disclosures were signed

6    by Plaintiff on May 2, 2006, which means that Plaintiff's notice of rescission was not

7    made within the three-year time frame.[6]  Plaintiff does not challenge the validity or

8    completeness of the disclosures he agreed to in 2006, rather his letter claims that he did

9    not receive complete documents—without explaining what was incomplete about the

10   disclosures he signed.  [Doc. 24 (SAC), at Ex. 7).  The SAC also makes no attempt to

11   describe any insufficiency in the loan's TILA disclosures.  [*Id.* (SAC) at ¶¶ 127-139]

12          Plaintiff asserts that Defendants violated federal law by failing to recognize

13   Plaintiff's letter of "rescission," but the letter Plaintiff provided was not addressed to

14   Defendants and was purportedly sent years before Defendants attained responsibility for

15   the loan.  Plaintiff's ability to enforce his right to rescind, if he ever had a viable claim of

16   rescission, expired long before Defendants acquired the loan.

17          What is more, Plaintiff consummated the loan in May 2006.  This suit was not filed

18   until November 2016—over a decade later.  Plaintiff also still possesses the collateral that

19   is the Property at issue here.  Any claim for rescission under TILA is time-barred, and any

20   claim for civil damages under TILA is baseless.

21

22

23

24   _____
     [6]  *See* Truth In Lending Disclosure statement, dated May 2, 2006, attached hereto as

25   Exhibit A. The contents of this document are sufficiently referenced in the SAC and
     Plaintiff's arguments to warrant inclusion in this motion because Plaintiff failed to include

26   the document in the SAC.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.
     308, 322-23 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other

27   sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in
     particular, documents incorporated into the complaint by reference, and matters of which

28   a court may take judicial notice.").

1

2

**D.**    **Plaintiff Fails to State a Claim for Relief Under the Fair Debt Collection Practices Act ("FDCPA") (COUNT IV).**

3

For Plaintiff's final formal claim for relief, Plaintiff asserts that Caliber violated the

4

Fair Debt Collections Practices Act (FDCPA), under 15 U.S.C. § 1672.  [Doc. 24 (SAC)

5

at ¶¶ 140-161]  But Plaintiff fails to state a claim under FDCPA because, as this Court has

6

already held in this case, Caliber is not a "debt collector" as defined under the FDCPA.

7

The purpose of the FDCPA is to regulate (and thus eliminate) abusive practices by debt

8

collectors.  15 U.S.C. § 1692(e); *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp.

9

2d 1186, 1201-02 (E.D. Cal. 2013).  As such, the FDCPA applies only to debt collectors

10

and not to Caliber, a mortgage servicer.  Plaintiff does not and cannot allege that Caliber's

principal business is FDCPA debt collection.  *See id.*

11

"Debt collectors" may face civil damages under the FDCPA for "engaging in

12

certain abusive practices while attempting to collect debts."  *Ho v. ReconTrust Co., NA*,

13

840 F.3d 618 (9th Cir. 2016) (citing 15 U.S.C. § 1692d-f, 1692k) (emphasis added).

14

Under this statue, a "debt collector" is defined as:

15

16

17

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

18

15 U.S.C. § 1692a(6).  As the Court has previously explained, "mortgagees and their

19

beneficiaries, including mortgage servicing companies, are not debt collectors subject to

20

the FDCPA."  *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182

21

(D. Ariz. 2009) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985);

22

*see also De Dios v. Int'l Realty & Inves.*, 641 F.3d 1071, 1075 n.3 (9th Cir. 22011) ("debt

23

collector does not include those 'mortgage service companies and others who service

24

outstanding debts or others, so long as the debts were not in default when taken for

25

servicing.'"  (quoting S. Rep. No. 95-382 (1977)).  Further, "actions taken to facilitate a

26

non-judicial foreclosure, such as sending the notice of default and notice of sale, are not

27

attempts to collect 'debt' as the term is defined by the FDCPA."  *Ho*, 840 F.3d 618.  Yet

28

1    again, Plaintiff simply ignores the Court's prior ruling in this same case that "actions

2    taken by Defendants to facilitate the non-judicial foreclosure of the Property . . . do not

3    qualify as debt collection within the meaning of the FDCPA" and that the FDCPA does

4    not provide any defenses against non-judicial foreclosure. [Doc. 7 (11/23/2016 Order) at

5    5] For this reason alone, the SAC fails to state a claim arising under the FDCPA.

6         In addition, Plaintiff makes a host of conclusory statements about Caliber's

7    communications regarding the loan.  For example, Plaintiff commits sixteen paragraphs to

8    statute sections that were purportedly "violated" but does not provide any well-pleaded

9    facts describing the conduct by Caliber that supposedly violated each of these statutory

10   provisions, including statutory provisions unrelated to the FDCPA.  [Doc. 24 (SAC) ¶¶

11   141-156]  The remaining paragraphs in this section do not add facts to the section, but

12   rather reiterate Plaintiff's position that the SAC includes allegations sufficient to support a

13   FDCPA claim.  Even if the Court reversed its prior correct legal decision that the FDCPA

14   does not apply because Caliber is not acting as debt collector by foreclosing on Plaintiff's

15   home loan, the SAC continues to be woefully deficient in substantively describing any

16   conduct of Caliber's that would have violated the FDCPA.

17        Plaintiff's allegations continue to be conclusory and do not state a plausible claim

18   to relief under the FDCPA.  Plaintiff still does not specify the nature of Caliber's

19   supposedly abusive debt collection practices.  Although Plaintiff claims that he received

20   "debt collector" communications from Caliber, the communications Plaintiff now attaches

21   to the SAC demonstrate Caliber's intent to respect Plaintiff's request to no longer receive

22   correspondence. For example, Exhibit 2 to the SAC (letter from Caliber dated December

23   15, 2016) advises Plaintiff "that you [Plaintiff] will no longer receive any correspondence,

24   except to the extent that such communications are permitted or required by applicable law.

25   Caliber may, however, continue to pursue any and all remedies afforded it under the terms

26   of your account."  [Doc. 24 (SAC), Ex. 2]

27        Plaintiff's SAC also includes an implication that the Notices of Trustee's Sale he

28   received from Caliber were objectionable communications under the FDCPA.  Certainly,

1  Plaintiff would have objected (and challenged the potential sale) to the sale had he not

2  received notice of Caliber's actions taken to facilitate the non-judicial foreclosure of the

3  Property, which, as the Court already held, do not fall into the FDCPA's meaning of "debt

4  collection."  [Doc. 7 (11/23/2016 Order) at 5]  Further, although the FDCPA provides a

5  possible basis for civil damages, the statute provides no defense against a non-judicial

6  foreclosure.

7          Numerous courts have concluded that "the activity of foreclosing on [a] property

8  pursuant to a deed of trust is not collection of a debt within the meaning of the FDCPA."

9  *Diesner v. Mortgage Electronic Registration Sys.*, 618 F. Supp. 2d 1184, 1188-89 (D.

10  Ariz. 2009) (citing *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1203-04 (D.

11  Or. 2002) (the activity of foreclosing on a property is not the collection of a debt within

12  the meaning of the FDCPA); *Castro v. Exec. Trustee Servs., LLC*, No. CV-08-2156-PHX-

13  LOA, 2009 WL 438683, at *6 (D. Ariz. Feb. 23, 2009) (same).

14          Plaintiff points to letters sent by Caliber that provide a notice that "This is an

15  attempt to collect a debt."  [Doc. 24 (SAC) at Exs. 2-3]  This does not constitute an

16  admission to being a "debt collector" as contemplated by the FDCPA, and a label on a

17  letter does not change the substance of the underlying transaction or whether that

18  transaction falls within the scope of the statute.  The FDCPA fails to provide grounds

19  upon which relief may be granted, and as a result this claim must also be dismissed.

20          **E.      Amendment of the SAC would be futile.**

21          Even liberally construing the SAC to find any way in which Plaintiff could

22  possibly state a claim for relief, Plaintiff has failed to state any claims upon which relief

23  may be granted.  Nor could Plaintiff amend his claims to allege that Caliber caused him

24  any injury for which relief can be granted.  A court may deny leave to amend when

25  dismissing a case for failure to state a claim if "the court determines that the pleading

26  could not possibly be cured by the allegations of other facts."  *Lopez v. Smith*, 203 F.3d

27  1122, 1127 (9th Cir. 2000).  Plaintiff has already taken advantage of leave to amend

28  twice, with several of Court's orders and Caliber's earlier motion to dismiss that shed

light on some of the problems in Plaintiff's pleadings. [*E.g.*, Doc. 7 (11/23/2016 Order) at 4-5 ("Brosnahan's allegations are conclusory and do not state a plausible claim to relief under the FDCPA. He does not specify the nature of Defendants' abusive debt collection practices. . . ."); Doc. 23 (9/19/2017 Order) at 3 ("Instead of providing a short and plain statement showing that he is entitled to relief, Plaintiff has submitted a rambling 27-page narrative that fails to clearly and concisely state the factual and legal bases for his claims. Plaintiff's complaint which consists primarily of legal jargon rather than factual allegations, is far too verbose and convoluted to understand . . . .")] Yet, Plaintiff ignored this advice and filed a SAC, which is substantially similar in nature to the Complaint and the FAC, and makes several unsupported, conclusory allegations and a recitation of statutes devoid of explanation of how the statutes apply or the factual allegations to support any legal claims. Amendment at this point would be futile because Plaintiff has failed to state any reasonable facts that could support any claim for relief.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss with prejudice all of Plaintiff's claims.


Dated: November 1, 2017                **PERKINS COIE LLP**


                                       By: /s/ *Kendra L. Haar*
                                           Brian C. Lake
                                           Kendra L. Haar
                                           2901 North Central Avenue, Ste. 2000
                                           Phoenix, Arizona  85012-2788

                                       Attorneys for Defendants Caliber Home
                                       Loans, LSF9 Master Participation Trust,
                                       and Summit Service and Realty LLC

1

## NOTICE OF CERTIFICATION OF CONFERRAL

2  Pursuant to this Court's order dated November 29, 2016, the parties have conferred

3  to determine wither an amendment could cure a deficient pleading.  In this conferral, the

4  parties have been unable to agree that the pleading is curable by a permissible

5  amendment.  Accordingly, Defendants have moved forward with filing the above motion

6  to dismiss pursuant to Federal Rule of Procedure 12(b).

7

Dated:  November 1, 2017                              **PERKINS COIE LLP**

8

9                                                     By: /s/ *Kendra L. Haar*

10                                                        Brian C. Lake
                                                        Kendra L. Haar
11                                                      2901 North Central Avenue, Ste. 2000
                                                        Phoenix, Arizona  85012-2788

12                                                      Attorneys for Defendants Caliber Home
                                                        Loans, LSF9 Master Participation Trust,
13                                                      and Summit Service and Realty LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **VERIFICATION**

2

    I, Nathaniel Mansi, am Default Service Officer at Caliber Home Loans, Inc.  I am

3

authorized to make this verification on behalf of Caliber in the matter *Brosnahan v.*

4

*Caliber Home Loans, Inc. et al.*, No. 3:16-cv-08277-DLR.  I have read the above Motion

5

to Dismiss Plaintiff's First Amended Complaint, dated November 1, 2017. The facts

6

stated therein are not all within my personal knowledge, but have been assembled by

7

authorized representatives and counsel, and I am informed and believe that the facts stated

8

therein are true based on my review of the business records.

9

    I declare upon penalty of perjury that the foregoing is true and correct.

10

    Executed this 1st day of November, 2017.

11

12

                                CALIBER HOME LOANS, INC.

13

                        By: _____
                                Nathaniel Mansi

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2017, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing.

I also certify that on November 1, 2017, I served a copy of the attached documents via First Class mail on Plaintiff *Pro Se* Michael J. Brosnahan, 21 Hummingbird Circle, Sedona, AZ 86336-7012.

<u>s/ Susan Carnall</u>

137467296.1

# Exhibit A

# TRUTH IN LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Applicants: **Michael J Brosnahan**

Prepared By: **US Capital Mortgage**
**1835 W HWY 89A Ste 8**
**Sedona , AZ 86336**
**928-204-0019**

Property Address: **21 Hummingbird Circle**
**Sedona, AZ 86336-6915**

Application No: **06042800**

Date Prepared: **01/24/2006**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf | TOTAL OF PAYMENTS<br>The amount you will have paid after making all payments as scheduled |
|---|---|---|---|
| * 3.000 % | $ * 190,283.12 | $ * 367,500.00 | $ * 557,783.12 |

REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit
PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 359 | 1,549.39 | 12/01/2005 | | | | | | |
| 1 | 1,552.11 | 11/01/2035 | | | | | | |

☐ DEMAND FEATURE: This obligation has a demand feature.
☐ VARIABLE RATE FEATURE: This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

CREDIT LIFE/CREDIT DISABILITY: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

INSURANCE: The following insurance is required to obtain credit:
☐ Credit life insurance ☐ Credit disability ☑ Property insurance ☐ Flood insurance
You may obtain the insurance from anyone that is acceptable to creditor
☐ If you purchase ☐ property ☐ flood insurance from creditor you will pay $ _____ for a one year term.
SECURITY: You are giving a security interest in: **22 HUMMINGBIRD CIRCLE, SEDONA AZ 86336**
☐ The goods or property being purchased ☑ Real property you already own.
FILING FEES: $ 45.00
LATE CHARGE: If a payment is more than 15 days late, you will be charged 5.000 % of the payment
PREPAYMENT: If you pay off early, you
☑ may ☐ will not have to pay a penalty.
☑ may ☐ will not be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
☐ may ☐ may, subject to conditions ☑ may not assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate ☑ all dates and numerical disclosures except the late payment disclosures are estimates.

* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

_____ 5-3-06
Michael J Brosnahan (Applicant) (Date)

_____
(Applicant) (Date)

_____
(Applicant) (Date)

_____
(Applicant) (Date)

_____
(Lender) (Date)

Calyx Form - til.hp (02/95)

Prepared by: AMANDA TAVES

# TRUTH IN LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: America's Wholesale Lender, itself or as agent for
Countrywide Bank, N.A.
1199 North Fairfax St. Ste.500
Alexandria, VA 22314

[X] Preliminary  [ ] Final
DATE 05/10/2006

BORROWERS: MICHAEL J BROSNAHAN

LOAN
CASE NO.    137733623
Type of Loan  CONV UNINSURED
NCARM MTA 1mo Intro
PO 1yrHPP

ADDRESS      22 HUMMINGBIRD CIRCLE
CITY STATE / ZIP SEDONA, AZ 86351
PROPERTY     21 HUMMINGBIRD CIRCLE
SEDONA, AZ 86336-6915

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| e 8.263 % | $ e 729,302.86 | $ e 360,573.44 | $ e 1,089,876.30 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| e   12 | e 1,599.38 | MONTHLY BEGINNING 07/01/2006 |
| e   46 | e 1,719.33 | MONTHLY BEGINNING 07/01/2007 |
| e  301 | e 3,283.41 | MONTHLY BEGINNING 05/01/2011 |
| e    1 | e 3,288.15 | LAST PAYMENT DUE   06/01/2036 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

DEMAND FEATURE:  [X]  This loan does not have a Demand Feature.      [ ]  This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
[X] This loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at:
21 HUMMINGBIRD CIRCLE, SEDONA, AZ 86336-6915

ASSUMPTION: Someone buying this property   [ ] cannot assume the remaining balance due under original mortgage terms
[X] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

PROPERTY INSURANCE: Hazard insurance, including flood insurance if the property is in a Special Flood Hazard Area, is required as a condition of this loan. You may obtain the insurance coverage from any insurance company acceptable to the lender. Complete details concerning insurance requirements will be provided prior to loan closing.

LATE CHARGES: If your payment is more than 15        days late, you will be charged a late charge of        5.000%
of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
[ ] may  [X] will not    be entitled to a refund of part of the finance charge.
[X] may  [ ] will not     have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____    _____    _____
BORROWER                        DATE       BORROWER                        DATE
MICHAEL J BROSNAHAN

_____    _____    _____    _____
BORROWER                        DATE       BORROWER                        DATE

FHA/VA/CONV
● Truth in Lending Disclosure
2C298-US (02/06)(d)

Page 1 of 2





LOAN #: 137733623

## DEFINITION OF TRUTH-IN-LENDING TERMS

### ANNUAL PERCENTAGE RATE

This is not the Note rate for which the borrower applied. The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge. Other charges which are used in calculation of the Annual Percentage Rate are Private Mortgage Insurance or FHA Mortgage Insurance Premium (when applicable) and Prepaid Finance Charges (loan discount, origination fees, prepaid interest and other credit costs). The APR is calculated by spreading these charges over the life of the loan which results in a rate higher than the interest rate shown on your Mortgage/Deed of Trust Note. If interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same.

### PREPAID FINANCE CHARGES

Prepaid Finance Charges are certain charges made in connection with the loan and which must be paid upon the close of the loan. These charges are defined by the Federal Reserve Board in Regulation Z and the charges must be paid by the borrower only, and not the seller if applicable. Non-Inclusive examples of such charges are: Loan origination fee, "Points" or Discount, Private Mortgage Insurance or FHA Mortgage Insurance, Tax Service Fee. Some loan charges are specifically excluded from the Prepaid Finance Charge such as appraisal fees and credit report fees.

Prepaid Finance Charges are totaled and then subtracted from the Loan Amount (the face amount of the Deed of Trust/Mortgage Note). The net figure is the Amount Financed as explained below.

### FINANCE CHARGE

The amount of interest, prepaid finance charge and certain insurance premiums (if any) which the borrower will be expected to pay over the life of the loan.

### AMOUNT FINANCED

The Amount Financed is the loan amount applied for less the prepaid finance charges. Prepaid finance charges can be found on the Good Faith Estimate. For example if the borrower's note is for $100,000 and the Prepaid Finance Charges total $5,000, the Amount Financed would be $95,000. The Amount Financed is the figure on which the Annual Percentage Rate is based.

### TOTAL OF PAYMENTS

This figure represents the total of all payments made toward principal, interest and mortgage insurance (if applicable).

### PAYMENT SCHEDULE

The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable). These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller.

Prepared by: AMANDA TAVES

**America's Wholesale Lender, itself or as agent**
**for Countrywide Bank, N.A.**

DATE:     05/10/2006
BORROWER: MICHAEL J. BROSNAHAN
CASE #:
LOAN #:   137733623
PROPERTY ADDRESS: 21 HUMMINGBIRD CIRCLE
                     SEDONA, AZ 86336-6915

Branch #: 0000921
2555 E. CAMELBACK RD. #100
PHOENIX, AZ 85016
Phone: (602)285-9133
Br Fax No.: (N)

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---:|
| 1. | Loan Amount | 367,500.00 |
| 2. | Prepaid Finance Charges: | |
| | Origination Fee | 0.00 |
| | Discount Points | 459.38 |
| | Tax Service Fee | 70.00 |
| | Processing (Underwriting) | 0.00 |
| | Prepaid Interest ( __30__ days) | |
| | of % per annum | 2,454.30 |
| | Mortgage Insurance Premium | 0.00 |
| | Mortgage Insurance Impounds | 0.00 |
| | Warehouse Fee | 0.00 |
| | VA Funding Fee | 0.00 |
| | FHA UFMIP | 0.00 |
| | Buydown | 0.00 |
| | Underwriting Fee | 560.00 |
| | Broker Origination Fee | 1,837.50 |
| | Broker Points | 459.38 |
| | Courier/Express Mail-Clsng | 60.00 |
| | Closing/Escrow | 500.00 |
| | Flood Check Fee | 26.00 |
| | Processing Fee | 500.00 |
| | **TOTAL** | 6,926.56 |
| 3. | Amount Financed (1 minus 2) | 360,573.44 |

I/We hereby acknowledge reading and receiving a completed copy of this disclosure.

_____       _____
Borrower                       Date       Borrower                     Date
MICHAEL J. BROSNAHAN

_____       _____
Borrower                       Date       Borrower                     Date

FHA/VA/CONV
Itemization of Amount Financed - Reg Z
2C120-US (03/04)(d)



