Brian C. Lake (#020543)
Kendra L. Haar (#030959)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
BLake@perkinscoie.com
KHaar@perkinscoie.com
docketphx@perkinscoie.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL J. BROSNAHAN,<br><br>Plaintiff,<br><br>v.<br><br>CALIBER HOME LOANS, INC., LSF9 MASTER PARTICIPATION TRUST, and SUMMIT SERVICE AND REALTY LLC<br><br>Defendants. | No. 3:16-cv-08277- DLR<br><br>**DEFENDANTS CALIBER HOME LOANS, INC., LSF9 MASTER PARTICIPATION TRUST, AND SUMMIT SERVICE AND REALTY LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>(Honorable Douglas L. Rayes) |

For over eight years, Plaintiff Michael J. Brosnahan has not made his mortgage payments. Plaintiff does not dispute that he is in default of his loan obligations either. Nevertheless, he has filed this suit (and an earlier lawsuit) to stop any foreclosure action on the collateral property, and he has asserted a series of violations under various federal laws—without stating any facts or alleging any tenable claim for relief against Caliber. As a result, the Second Amended Complaint ("SAC") has failed to perform the essential functions of a complaint, and Plaintiff's claims must be dismissed with prejudice.

Last November, this Court clarified that "mortgagees and their beneficiaries, including mortgage servicing companies, are not debt collectors subject to the FDCPA." [Doc. 7 (11/23/2016 Order), at 4 (quoting *Mansour, Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009)] Yet, Plaintiff's SAC and Response to Defendants Caliber Home Loans, Inc., LSF9 Master Participation Trust, and Summit Service and Realty LLC's (collectively "Caliber")[1] Motion to Dismiss Plaintiff's Second Amended Complaint ("Response") ignores this legal conclusion and repeats more of the same flawed arguments under the FDCPA. [Doc. 24 (SAC), Doc. 26 (Response)] These filings attempt similarly flawed legal arguments arising under TILA and RESPA. [*Id.*] None of these arguments afford Plaintiff any type of legal recovery from Caliber. This is yet another desperate attempt to suggest there is some technicality that will allow Plaintiff to keep his property, without having to satisfy his mortgage obligations.

Both Plaintiff's Response and the SAC are composed entirely of conclusory allegations that fail to state a plausible claim for relief. [*See* Doc. 7 (11/23/17 Order) at 4, Doc. 24 (SAC), Doc. 26 (Response)] As a result, both the Response and the SAC rest on errors of law that cannot be rectified. The SAC contains no well-pleaded facts, fails to state any tenable claim for relief, and must be dismissed. Further, this Court should not allow Plaintiff to file a third amended complaint and should dismiss this action with prejudice because Plaintiff's claims are fatally flawed and cannot be salvaged by any amendment.

In addition to listing a series of federal statutes—without explaining how these statutes would apply to the situation at hand—the Response lists a series of "facts," which once again amount only to legal conclusions without actual facts demonstrating any legal justification for relief. [*See* Dkt. 26, Response, at 4-9] Truly, the only *facts* that have been presented in this case are:

---

[1] The Second Amended Complaint ("SAC") makes no effort to separate the Defendant entities or their conduct.

- In 2006, Plaintiff borrowed $373,500.00 for a home loan. [Doc. 23 (9/19/17 Order) at 1]
- Simultaneously, Plaintiff executed a deed of trust securing repayment of the loan using the Property as collateral. [*Id.*]
- In 2009, Plaintiff stopped making payments on the loan. [*Id.*]
- Plaintiff continues to possess the collateral. [Doc. 26 (Response) at 4 ¶ 1]

These are not facts that demonstrate Plaintiff is entitled to any relief.

Finally, Plaintiff argues [at 15] that Caliber is "acting with impunity," but the reality is that Plaintiff entered into a contract for a loan, offering his property as collateral to secure that loan. Plaintiff admittedly stopped making payments on that loan nearly nine years ago, but still is fighting to hold on to the collateral without making any effort to repay the loan. It would appear that the party acting with impunity up until this point is, in fact, Plaintiff. Enough is enough.

**Argument**

**I. VIEWED IN THE LIGHT MOST FAVORABLE TO PLAINTIFF, THE SAC CONTINUES TO BE DEVOID OF FACTS ENTITLING PLAINTIFF TO RELIEF.**

While the Rules of Civil Procedure ("Rules") permit a liberal pleading standard that requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the pleader must nonetheless demonstrate why relief is legally warranted *and* the pleading must contain factual allegations sufficient to raise that right to relief above the "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate that his claim is plausible on its face. *Id.* A plaintiff armed with nothing more than conclusions in his complaint is not entitled to discovery, and the complaint should not survive a motion to dismiss. *Id.* at 678-79. This principle is true even when the plaintiff is proceeding pro se. *See, e.g.*, *Ticktin v. C.I.A.*, No. CV-08-998-PHX-MHM, 2009 WL 976517, at *4 (D. Ariz. Apr. 9, 2009).

1        Both the SAC and the Response to Defendants' Motion to Dismiss the SAC offer only speculative and conclusory arguments, misapplied extracts of statutory language, and unadorned "the-defendant-unlawfully-harmed-me" accusations that do not justify survival past this Motion to Dismiss. [*See generally* Doc. 24, SAC; Doc. 26, Response]

       Indeed, as the Court noted in its September 19th Order granting Caliber's first Motion to Dismiss, "[o]ne of the primary functions of a complaint is to provide defendants with notice of the legal claims asserted against them and the factual bases for those claims." [Doc. 23, 9/19/18 Order, at 3 (*citing McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996))] "A complaint written 'without simplicity, conciseness and clarity' as to who is being sued and for what, 'fails to perform the essential functions of a complaint.'" [*Id.* (*quoting McHenry*, 84 F.3d at 1180)]

       Plaintiff has failed to meet this burden of providing notice with a simple, concise, and clear statement of facts that entitle Plaintiff to relief. Plaintiff has failed to put Defendants on notice of the legal claims asserted against them and the factual bases that allegedly support each of those claims. In sum, the SAC offers no well-pleaded facts and no simple, direct, or concise allegations. The Response makes no attempt to state facts supportive of any claim without relying on unsupported speculation and conclusory allegations. [Doc. 26, Response, at 4-9] In fact, the Response further convolutes Plaintiff's arguments by listing "objections" as facts and lodging accusations of misconduct without ever articulating facts that would establish any grounds for recovery under the numerous federal statutes listed. After two rounds of briefing on this matter, it is less clear now than ever what Plaintiff's claims are and the factual bases that would support those claims. The SAC falls far short of the Rules' pleading requirements, and must be dismissed for this independent reason.

## II. PLAINTIFF HAS FAILED TO STATE ANY CLAIMS THAT WOULD ENTITLE HIM TO RELIEF.

       The SAC raises claims that: (1) Caliber did not meet conditions precedent of the loan documents (Count I); (2) arise under the Real Estate Settlement Procedures Act

("RESPA") (Count II); (3) arise under the Truth in Lending Act ("TILA") (Count III); (4) arise under the Fair Debt Collection Practices Act ("FDCPA") (Count IV). [Doc. 24] Plaintiff's Response to Defendants' Motion to Dismiss does not attempt to explain why or what facts would justify recovery under any of these claims. [*Compare* Doc. 24 (SAC), *with* Doc. 26 (Response)] The SAC is essentially Plaintiff's list of grievances and speculations. It does not clarify any ambiguities contained in the SAC, and it does not address the shortcomings of the SAC addressed in Caliber's prior Motion to Dismiss. In addition to again failing procedurally, the SAC and Plaintiff's Response to this motion again fail substantively to lay out facts supporting any of the alleged legal claims.

### A. Plaintiff Fails to State a Claim that the Conditions Precedent were Unmet (COUNT I).

The SAC outlines three separate conditions precedent that the loan documents supposedly required prior to initiating foreclosure. [Doc. 24 (SAC), at ¶¶ 108-122] This claim goes essentially unaddressed in the Response, providing only a single conclusory statement that "Defendants failed to meet Conditions Precedent pursuant to the DOT." [*See* Doc. 26 (Response), at 8, ¶ 29] As discussed above and previously, such a legal conclusion, without providing facts supporting the plausibility of the claim, need not be accepted as true in a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Thus, for the reasons explained in Caliber's Motion, this claim fails to state a claim upon which relief may be granted and must be dismissed with prejudice. [Doc. 25 (Motion), at 7-9]

### B. Plaintiff Fails to State a Claim under RESPA (COUNT II).

In the SAC, Plaintiff next claims that Caliber is liable for violations under the Real Estate Settlement Procedures Act ("RESPA"), pursuant to 12 U.S.C. § 2605. [Doc. 24 (SAC) at ¶¶ 123-126] RESPA provides that when a borrower contacts a loan servicer with a qualified written request regarding the servicing of the loan, the servicer must "provide the borrower with a written explanation or clarification that includes . . . information requested by the borrower [and] the name and telephone number of an

individual employed by, or the officer or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e). A qualified written request must include the borrower's information and a statement of the reasons the account is believed to be in error. *Id.* A qualified written request "is one that relates to the servicing of the loan." *Brabant v. JP Morgan Chase Bank*, CV 11-00848-TUC-JGZ, 2012 WL 2572281, at *9 (D. Ariz. July 2, 2012) (*citing Consumer Sols. REO v. Hillery*, 685 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009)).

The SAC included no factual basis or support for this claim, and again was not supplemented in the Response. [*See* Doc. 24 (SAC), at ¶¶ 123-126; Doc. 26 (Response), at 8, ¶ 26] The documents Plaintiff attached to the SAC demonstrate two things: (1) that Plaintiff's inquiries are not the kind of inquiries that constitute a "Qualified Written Request" under RESPA because they do not address or question the servicing of the loan, and (2) that the lender replied to Plaintiff's requests for information. [*See* Doc. 24 (SAC), at Ex. 7 (letter from Plaintiff to Caliber, dated June 27, 2016); *Id.* at ¶¶ 83-84] Neither the SAC, nor the Response, attempt to explain or establish how any response from the lender was deficient or how Plaintiff's original requests qualify for protection under RESPA. [*See* Doc. 24 (SAC), at ¶¶ 123-126; Doc. 26 (Response), at 8, ¶ 26] Plaintiff merely offers the conclusion that the lender did not respond in a timely manner and "attempted to mislead" Plaintiff in its response, without providing or quoting the response, describing how it was deficient, or describing what was supposedly misleading about the response. [Doc. 26 (Response), at 8, ¶ 26] This conclusion is not sufficient to plead a plausible claim for relief under Plaintiff's RESPA claim and Count II must also be dismissed with prejudice.

### C. Plaintiff Fails to State a Claim under TILA (COUNT III).

In the SAC, Plaintiff next claims that Caliber is liable for violating the Truth In Lending Act ("TILA"), pursuant to 15 U.S.C. § 1635. [Doc. 24 (SAC) at ¶¶ 127-139] There are no factual allegations in the SAC or added in the Response, which if proven true, could establish any Defendant's liability under TILA. This claim cannot survive a motion

1  to dismiss because it lacks any well-pled facts and only offers conclusory statements in
2  support of the claim.

3  TILA requires lenders to make certain specific disclosures of information in certain
4  approved formats before the loan is consummated. *See* U.S.C. § 1601, *et seq.* Caliber
5  was not involved in originating Plaintiff's 2006 loan—it had no involvement until 2016.
6  Thus, to survive a motion to dismiss, Plaintiff would have to allege specific facts showing
7  how his original lender failed to make the adequate disclosures required by the statute
8  before the loan was made, and establishing some basis by which Caliber could be held
9  liable for such a failure. Neither the SAC, nor the Response have met this standard.

10  As for civil damages claims against a subsequent assignee of a loan secured by real
11  property, TILA expressly provides that such a claim "may be maintained against any
12  assignee of such [original] creditor only if—(A) the violation for which such action or
13  proceeding is brought is apparent on the face of the disclosure statement provided in
14  connection with such transaction pursuant to this subchapter . . . ." 15 U.S.C.
15  § 1641(e)(1). Plaintiff has not pleaded any facts establishing that any alleged TILA
16  violation was "apparent on the face of the disclosure statement" that was provided to
17  Plaintiff when the loan was initially made in May 2006.

18  Further, even if Caliber had been involved in originating Plaintiffs' loans, the time
19  in which to bring such an action has run. The statute of limitations for a civil damages
20  claim under TILA is only one year. *Id.* § 1640(e). Since the loan was made in 2006, this
21  limitations period has long since run. The right to rescind a transaction under TILA
22  expires three years after the date of consummation of the transaction. *Id.* § 1635(f).
23  Plaintiff does not challenge the validity or completeness of the disclosures he agreed to in
24  2006—either in the right to cancel letter he purportedly sent in 2009 or in the SAC—
25  rather his letter claims that he did not receive complete documents, without explaining
26  what was incomplete about the disclosures he signed. [Doc. 24 (SAC), at Ex. 4] The
27  SAC also makes no attempt to describe any insufficiency in the loan's TILA disclosures.
28  [*Id.* (SAC) at ¶¶ 127-139 & Ex. 4]

Plaintiff consummated the loan in May 2006. This suit was not filed until November 2016—more than a decade later. Plaintiff also still possesses the collateral that is the Property at issue here. Any claim for rescission under TILA is time-barred, and any claim for civil damages under TILA is baseless, based on the content of the purported right to cancel letter and the facts alleged in the SAC. Plaintiff has not met his burden of pleading a plausible claim for relief under TILA, and this count must also be dismissed with prejudice.

### D. Plaintiff Fails to State a Claim under the FDCPA (COUNT IV).

Plaintiff has not and cannot plead a claim for relief arising under the FDCPA, 15 U.S.C. § 1692e. [Doc. 24 (SAC), at ¶¶ 140-161 (listing a series of legal conclusions about the FDCPA, without alleging any non-conclusory facts)] The SAC does not contain well-plead facts that support this failed legal claim, and the Response does nothing to rectify the SAC's failings. [Doc. 16 (Response), at 8 ¶ 27, 11 ¶¶ 41-42, 12 ¶¶ 44-45, 13 ¶ 47, 14 ¶ 49, 15 ¶¶ 53-56 (providing legal conclusions on the meaning of the FDCPA, without providing facts to support these legal conclusions)] This claim is not legally valid under the circumstances, nor does it entitle Plaintiff to any type of relief.

#### 1. Defendants are not "debt collectors" as defined by the FDCPA.

As this Court previously stated, "[t]o the extent Brosnahan's complaint is based on actions taken by Defendants to facilitate the non-judicial foreclosure of the Property, these actions do not qualify as debt collection within the meaning of the FDCPA." [Doc. 7 (11/23/2016 Order), at 5]; *see also Ho v. ReconTrust Co., NA*, 840 F.3d 618, 621 (9th Cir. 2016) ("actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as the term is defined by the FDCPA"). "The object of a nonjudicial foreclosure is to retake and resell the security, not to collect money from the borrower." *Ho*, 840 F.3d at 621. "Foreclosing on a trust deed is an entirely different path than collecting funds from a debtor." *Id.*

Because Defendants' actions here were to notice a Trustee's Sale commencing a nonjudicial foreclosure—which is not an attempt to collect on a debt but rather is the

process of vesting and divesting of title to real property according to the parties' prior agreement under the deed of trust—this action is not an attempt to collect a "debt" as that term is defined by the FDCPA, and Defendants are not "debt collectors" as defined by the FDCPA. *See id.* at 621. Plaintiff does not even attempt to respond to this critical point, which by itself is fatal to the SAC's FDCPA claims.

### 2. Defendants' communications to Plaintiff do not violate the FDCPA or provide Plaintiff grounds for relief.

Plaintiff points to communications from Defendants and asserts that his receipt of communications from Defendants violates the FDCPA. [*See, e.g.*, Doc. 26 (Response), at 8 ¶ 27] This argument is similarly misplaced, and fails to establish that Defendants are "debt collectors" under the FDCPA. "Enforcement of a security interest will often involve communications between the forecloser and the consumer. When these communications are limited to the foreclosure process, they do not transform foreclosure into debt collection." *Ho*, 840 F.3d at 623. Notices in a foreclosure informing the borrower that the foreclosure process has begun, explaining the foreclosure timeline, educating the borrower about the borrower's rights are notices designed to protect the borrower. *Id.* Such communications are vastly different from the "harassing communications that the FDCPA was meant to stamp out." *Id.* The repossession of a security interest and the nonjudicial foreclosure process requires some communication between the lender and the borrower. *Id.* at 623. Notice of a foreclosure sale does not constitute debt collection activity under the FDCPA. *Id.* Even though the prospect of having property repossessed may induce a borrower to pay off debt, the inducement exists by virtue of the lien, regardless of whether foreclosure proceedings begin. *Id.* at 621. As the Ninth Circuit explained, "[t]he fear of having your car impounded may induce you to pay off a stack of accumulated parking tickets, but that doesn't make the guy with the tow truck a debt collector." *Id.*

This time, Plaintiff attached several communications to the SAC. [Doc. 14 (SAC), at Exs. 1-3] These communications were apparently appended to support Plaintiff's argument that Caliber is a "debt collector" in this situation because it has noted on

communications that it is a "debt collector." As explained above and previously by the Court, Defendants are not debt collectors under the FDCPA and are not attempting to collect funds from Plaintiff. [Doc. 7 (11/23/2016 Order), at 5] Here, rather, Caliber is attempting to recover the property that secures the deed of trust, and as a result Defendants must provide Plaintiff with some communications related to the foreclosure for Plaintiff's own benefit. Plaintiff's own exhibits demonstrate that the communications he has received from Caliber were related to the foreclosure or the security interest in general, thus these communications do not violate the FDCPA, and Plaintiff has not stated a claim for relief by making claims about receiving communications from Defendants.

### 3. Forcing mortgage servicers to comply with the FDCPA would create a conflict with state non-judicial foreclosure statutes.

Holding trustees liable under the FDCPA for carrying out foreclosures and trustee's sales "would subject the trustee to obligations that would frustrate their ability to comply with [state] statutes governing non-judicial foreclosure." *Ho*, 840 F.3d at 624. The United States Supreme Court has instructed the courts not to interpret the FDCPA in a way that interferes with state law unless Congress clearly intended to displace that state law. *See, e.g.*, *Sheriff v. Gillie*, 136 S. Ct. 1594, 1602 (2016) (holding that an independent contractor's communications collecting debts owed to the state of Ohio and printed on state letterhead were not misleading under the FDCPA when Ohio law permitted the independent contractors to use the letterhead).

In Arizona, applying the FDCPA to nonjudicial foreclosure actions would frustrate the trustee's ability to comply with Arizona statutes. For example, the FDCPA prohibits debt collectors from directly communicating with debtors if the debt collector knows that the debtor has legal representation. 15 U.S.C. § 1692c(a)(2). But Arizona law requires the trustee to mail the notice of sale "to each person who, at the time of recording of the notice of sale, appears on the records of the county recorder in the county in which any part of the trust property is situated to have an interest in any of the trust property," without mention for concern of whether an individual is represented. *See* A.R.S. § 33-809(B)(2). As an additional example, Arizona law requires the trustee to mail a copy of

the notice of sale within five days after recording it, pursuant to A.R.S. § 33-809(C), but compliance with that statutory deadline could be hindered by the disputed debt provisions of the FDCPA, if it were applied to non-judicial foreclosures. *See* 15 U.S.C. § 1692g(b). This further demonstrates the wisdom of the court's repeated holdings that the FDCPA simply does not apply to the nonjudicial foreclosure process because it is not the collection of a "debt." Plaintiff's Count IV under the FDCPA must be dismissed.

### III. ADDITIONAL AMENDMENT OF THE SAC WOULD BE FUTILE.

In his Response, Plaintiff requests (at 16) that the Court grant leave to again amend his Second Amended Complaint. But Plaintiff was already given more than one opportunity to amend his flawed claims, and no amendment could possibly fix the fatal errors outlined in Defendants' Motion to Dismiss. As more fully explained in Defendants' Motion, no amendment will allow Plaintiff to state any claim based on a violation of RESPA, TILA, or the FDCPA. [Doc. 25 (Motion to Dismiss), at 4-13] No set of facts will allow Plaintiff to state a claim for wrongful foreclosure—to the extent such a claim even exists in Arizona—because Plaintiff cannot allege that he was not in default or is able to tender the full amount due on the note. Plaintiff's Complaint cannot "possibly be cured by the allegations of other facts," therefore dismissal with prejudice is appropriate. *See, e.g.*, *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### Conclusion

For the foregoing reasons, and because no further amendment would repair Plaintiff's fatally flawed claims, Defendants respectfully request that the Court dismiss with prejudice all of Plaintiff's claims.

Dated: November 21, 2017

**PERKINS COIE LLP**

By: /s/ *Kendra L. Haar*
    Brian C. Lake
    Kendra L. Haar
    2901 North Central Avenue, Ste. 2000
    Phoenix, Arizona 85012-2788

Attorneys for Defendants Caliber Home Loans, LSF9 Master Participation Trust, and Summit Service and Realty LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2017, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing.

I also certify that on November 21, 2017, I served a copy of the attached documents via First Class mail on Plaintiff *Pro Se* Michael J. Brosnahan, 21 Hummingbird Circle, Sedona, AZ 86336-7012.

s/ Susan Carnall

137677348.2